Good morning, Your Honors. May it please the Court, my name is Kathleen Holt and I'm here on behalf of Joan Ingram. I'd like to reserve two minutes of rebuttal time, please. Joan Ingram is disabled by an anxiety disorder and depression, as well as personality disorder, apart from substance abuse. The Social Security Operating Manual states that substance abuse is not material where there is evidence after a drug-free period of one month that there are existing other impairments. In this case, psychologist Dr. Richard Washburn tested Joan when she was more than one month substance-free. The test results were valid. He found that she had disabling depression and anxiety. No other doctor in this record tested depression and anxiety levels. The ALJ reported Dr. Washburn's statements, but he erroneously made no interpretation or findings about Dr. Washburn's statements. I'm sorry, Your Honor. Washburn's opinion was expressed in his examination before her attack and her rape. Oh, no, sir. Yes. The attack that was made on her in Denver was done in 1990, and she was approved for Social Security benefits after that. Then she was taken off. Dr. Washburn's examination was done in 1998. 1998. I'm wrong on that. Thank you. Okay. And making interpretation and findings is required by this Court through the Reddick decision, as well as Social Security rulings 96-2P as well as 96-8P. I'm still having trouble with Dr. Washburn. I thought his statement was that she could have worked when she was sober before her attack. Is that an incorrect reading of what Dr. Washburn said? I believe so, Your Honor, because Dr. Washburn had not seen the claimant until – being directed at what she could have done before the Colorado attack. I'm wrong about that. Yes, Your Honor. Yes. What Dr. Washburn said in 1998 was the test results indicate that Ms. Ingram is experiencing a disabling degree of anxiety and depression. That's from his report. That's at ER 151. The government supposes that the ALJ inferred that Dr. Washburn was referring to a combination of impairments, both her mental impairments as well as the substance abuse impairments. However, the report says that she is disabled during a period of substance-free time by her depression and anxiety. Where does it say that in the report? I have Dr. Washburn's name. Are you looking at ER 151? Wait a minute. We're talking about the Washburn? Correct. Okay. 151. 151, what would be the second paragraph on the page, but the first full paragraph. The test results or Ms. Ingram? The test results indicate that Ms. Ingram is experiencing a disabling degree of anxiety and depression. She also appears to have a personality disorder that makes it difficult for her to establish healthy patterns of relating to others. Then in the very second to last full paragraph there, the very last sentence says that the difficulty she reports are most likely due to her histrionic makeup and interference in her attention and concentration due to anxiety. Where does he note in his report, though, that she had been off alcohol? She had been in at the very beginning of his report, he indicates. She came by taxi to his office. She had been in an inpatient facility the only time for 45 days prior to her appointment with Dr. Washburn. The only other time she had left that facility in the 45 days was to attend her Social Security hearing. So she had been sober and under the direction of an inpatient facility for 45 days at that point when she had her evaluation with Dr. Washburn, who tested her with the appropriate tests that measure levels of anxiety and depression. Social Security earlier in 1997 had sent her to see Dr. Breen. Now, the real injustice in this case is that they, Social Security decided they didn't have her previous file. They were going to send her for an evaluation, but they sent her for a memory and a capacity, a cognitive evaluation. Dr. Breen did not evaluate her depression or her anxiety, performed no tests, and Social Security did not ask for that. So from that standpoint, Dr. Washburn was the only person in the record other than Dr. Reed who also had felt that she was unable to work. Dr. Breen was concerned about her alcohol intake and consumption, but he was unclear as to whether or not there was a combination at that point. Dr. Washburn clearly stated that she was disabled not by her alcohol. Again, what did the ALJ say about Dr. Washburn? He didn't address it? He didn't. All he said, he repeated what Dr. Washburn said, that she was disabled by depression and anxiety. That was the extent of his discussion of Dr. Washburn. He never explained why he didn't adopt Dr. Washburn's findings at all. He doesn't explain what he concludes with reference to the anxiety and depression features, did he? Didn't he and his bottom line ignore the depression and anxiety? Yes, he did, Your Honor. What he did allow for was in the personality disorder where Dr. Washburn had said it would interfere with her ability to Doesn't Dr. Murray have a strong statement on anxiety and depression both? Well, Dr. Murray was a non-treating, non-evaluating physician. Did he also contribute to that? He did, but his report was issued before Dr. Washburn's testing was done. It was done specifically on Dr. Breen's testing, which was on memory and cognitive. And so Dr. Murray didn't have the full scope of the information of the testing that was in the record. But I thought what Murray said, that she suffered from persistent anxiety and panic disorder. He did, Your Honor. And Dr. Murray also found that even without alcohol, that she would often have deficiencies in persistence, pace and concentration. Let me ask you, if we were to agree with you, are you asking us to remand for further proceedings? Are you asking for payment of benefits? I think she should be reinstated, Your Honor. Ironically, as the last two cases, the Claimants Council did not agree with ALJ Dethloff. In this case, I do agree with ALJ Dethloff. He was the ALJ in 1993 that found her to be disabled by personality disorder as well as her anxiety. Nothing has changed. There's been no sign at all in these records of any medical improvement in her condition. What is the strongest evidence in the record that would establish or indicate that the claimant would be disabled without consideration of the drug abuse? That would be Dr. Washburn's report. After being 45 days sober, that she still exhibited disabling conditions, mental impairments apart from substance abuse. You know, what I got out of this record, there's a long detailing of the drug abuse and alcohol abuse, and it seems to permeate the record, which seems to have affected the way in which the ALJ assessed this case. She had quite a few periods where she was sober. Seven years prior to her assault in Denver in 1990, which was a very traumatic experience for her. And as you can see in the record, I included the hospital results from that attack. But after that, she was not able to work. Even though she went to a clean and sober house several times, she became the house president. She was really trying. And I actually refused to take this case originally. You can see in the file that I stepped back. And then I realized she was trying so hard to get into treatment. And then when she was in treatment for 45 days, and I said to her, Jody, we can find out what really is true about your mental impairments. Then she said to me, I will not. And she hasn't gone back into alcohol, even though she's still trying to live on whatever she can get from other people to help her. So I appreciate your time. Thank you.  Thank you. Good morning, Your Honors. I'm Tom Hillsbury. Excuse me. I'm representing the commissioner in this case. I'd actually like to begin first by addressing some of the assertions made by claimants or appellants counsel. She first stated that Ms. Ingram had been sober for a month at a time, or more or less a month, six weeks, at the time of Dr. Washburn's evaluation, and that our policy manual dictates that that establishes that any limitations or impairments that exist in that period of sobriety, therefore, are independent of any past substance abuse. But there are two problems with this argument. One, first, she's quoting an internal policy manual, which this Court has already acknowledged is nonbinding and is something that we apply as appropriate to the facts of particular cases as they arise. And it's also in error on the count that it does not, in fact, state what she claims it does. It does not require that after a month of sobriety, they are easily separated out. In fact, what it says is it can be used, and she has supplied it in her reply brief, and the question she's referring to, it says it's addressing whether evidence of a drug-free period of at least one month establishes that other impairments in and of themselves is not established or in and of themselves are not disabling. And the response to it is, no, they're only intended as examples, and their documentation of a period of abstinence should not replace medical evidence. It can be used as a point of reference, but it should never become a presumption that substitutes for actual medical documentation. The – which brings right into Dr. Washburn's opinion. She's stated that – well, one, she states that VLJ only refers to him once. The – his decision actually references him in the excerpts of records at page 7, page 8, page 9, and page 11. He actually considered Dr. Washburn to a great degree, and in fact it was very – very influential in his ultimate decision, and he states so. The – he – his evaluation during this period of sobriety, she did come from her treatment center. He did state that she had a disabling degree of depression and anxiety. But he went on to say, and it's very interesting, the – where are you now? E.R. 151. 151? 151. Go ahead. The excerpts that Appellant's counsel read, she stopped – well, started E.R. 151, second paragraph, which begins – Hold on. 150 – I'm sorry. 151. The first full paragraph. First full paragraph. Yeah. Last sentence was not read in – by Appellant's counsel, where he says, It should be noted that she has been able to function without dependence on alcohol and drugs for only a relatively short few years out of her entire life, and then remained vulnerable to a relapse. The significance of that comment in context of his analysis is that she has been able to function without alcohol. She – the next paragraph was also an important phrase, was admitted, where it says she is in – That's a few years of her life. Pardon me? That's – she says a few years of her life. Is she talking about since 1990? I think that's why I was misled and questioned counsel the wrong way. Oh, that sentence seems to me to be referring to as a very troubled life. Her whole life has been one long tragedy. It has been, indeed. And she's turned to alcohol and drugs to escape. And all he's saying that is she could function for a few years out of this long, tragic life, and then she's fallen into a lapse. I don't see how that helps us on present or 1980 disability. Okay. I would bring – direct your attention to the first sentence of the next paragraph, where he states – I understand your concern there. I mean, we're looking at a long period. Ms. Ingram is currently involved in inpatient substance abuse treatment and is in the progress of improving her personal coping skills. She's improving. What is at issue here is whether – understandably, this is a tragic situation, and she's had a very rough life. What we need to establish is whether her substance abuse – what the ALJ has to establish under the law and under the amendments to the Social Security Act enacted by Congress, he needs to establish whether that substance abuse is material or immaterial to her disability. Dr. Washburn's report is important in the sense that it was brought about during the six-week period of sobriety. But is it overwhelming evidence that – in fact, I won't even refer to that standard. What does it evidence? And it shows two possibilities, that you can interpret the one sentence to say she is disabled only by depression and anxiety, and since she's been sober for six weeks, which he doesn't say, then her DNA is not material. But the ALJ's decision need only be subject to a scintilla of evidence or a scintilla of – his burden is a scintilla of proof. And the Court, I believe, should defer to the ALJ's decision when it is supported by an alternative. Let me ask you the sort of the – the converse question I asked Ms. Holt is that what is the strongest evidence in the record that, you know, regardless of what might be done about her other problems, that substance abuse is, you know, whatever the statute says, you know, is her disability. It's a material – what is it, a material factor in her disability, something like that? In other words, that no matter what you do with these other disabilities, as long as, you know, that she's going to still abuse substances and – so that's her real problem. What's the strongest evidence that supports that view? Dr. Murray's opinion in combination with Dr. Washburn's analysis. But you still depend on Dr. Washburn, right? I do. I believe that it is the plaintiff's burden to establish that her DNA – or, excuse me, the appellant's burden to establish that her drug abuse or alcoholism is not material to her disability. Well, now, didn't – didn't Murray say that whether she drinks or not, she'll have distress, disorders, panic disorders, symptoms of anxiety? No, he did not. He didn't say that. He actually gave a detailed analysis of her limitations with substance abuse and without substance abuse. And he did that at pages – the transcript record, ER 73. I'm sorry. I'm sorry. What page are you on? ER 73, as well as – Is this one of those that PRTF form? It is, indeed. All right. What page – 71? The best ones that – let me double-check. There's a couple of them in here that he does, and one is more particular. ER 76, 77. 76 and 7? 77. He checks the box here? Yes. That's what you're talking about? Mm-hmm. It's a standard. Which one of these – C is with, and S is without. I believe it's probably from the Latin. So, which of these – you're talking about, like, sustained concentration and persistence? Is that what you're talking about? Right. Understanding and memory, sustained concentration, social interaction and adaptation. And without substance abuse, he lists her with not significantly limited or, in some cases, moderately limited, but no more so than moderate. In fact, the counsel argued that he had found often, even without substance abuse, and that is not reflected in his report at all. So let's put that against, like, for example, on B6, the ability to maintain attention and concentration for extended periods. He checked box number 2, and he put C and S. Right. So that means? No difference at that point. With or without, she would have a moderate limitation ability to maintain attention and concentration. She has a problem there. A moderate. With or without alcohol. A moderate limitation with or without alcohol. Ability to perform. The ALJ did find that she had – she was disabled by not just the DNA. I mean, it was also, as well, her anxiety and depression as encompassed within the listings of 1206 and 1208. This is not inconsistent with Dr. Washburn's opinion, and Dr. Washburn's opinion is consistent with the ALJ's decision as well. He, in fact, concludes by stating she has a substance abuse disorder, that it will take her up to a year to recover, and he diagnoses her in his final paragraph as chronic post-traumatic stress, dysthymic personality disorder, and substance abuse disorder. So it does not – his report does not distinguish substance abuse from her other impairments, which is the burden of the plaintiff to prove, or the appellant. She has not met that burden. I have run out of time, so if you have no further questions, I have no other time. Thank you, Mr. Ellsberg. Counsel's last statement was that there was no distinguishing difference in that the ALJ didn't make a distinguishing difference between her mental impairments and the alcohol. That's what he's required to do in this Court under the Ball case. He's required to do a separating analysis to clearly separate out the difference between the mental impairments and the substance abuse to see if the substance abuse were gone, if the other impairments would remain disabling. Counsel was also referring to Dr. Murray's report on ER 73, where Dr. Murray checked often deficiencies of concentration, persistence, or pace. In the ALJ's decision, there is no consideration of those deficiencies at all. The ALJ found the only limitations that Ms. Ingram had was that she was unable to have a good rapport with people, so that she did have the moderate – he allowed for the moderate difficulties in maintaining social functioning, but mentioned nothing about the deficiencies. So if, as Counsel has mentioned, that the ALJ was relying on Dr. Murray's report, he didn't include that piece. Additionally, in Dr. Washburn's report on ER 151, again, where Counsel indicated that Ms. Ingram is currently involved in inpatient substance abuse treatment and is in the process of improving her personal coping skills, if we look at ER 134, which is the Cedar Hills Treatment Facility, where she was when she went directly to see Dr. Washburn, there's a report in there that is dated approximately 40 days after she was in the inpatient treatment, right before she went to Dr. Washburn, and the report says she is emotionally unstable. Her anxiety attacks are or can be disabling. Depression renders her powerless. Regardless of energy and rigor. So it's not just even Dr. Washburn, it's also the counselors that have said that she is unable to work. So again, Dr. Washburn had the testing in the record that was important. Dr. Breen, sent to by Social Security, was simply not testing her for the correct impairments. Thank you, Your Honors. All right. Thank you. The case is submitted for decision.
judges: Reavley , Tashima, Paez